IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **KEVIN M EHRINGER ENTERPRISES INC. d/b/a DATA CENTER SYSTEMS,** § § § | | |
| Plaintiff, § § | | |
| v. § | Civil Action No. **3:06-CV-812-L** | |
| § | | |
| **MCDATA SERVICES CORPORATION, f/k/a COMPUTER NETWORK TECHNOLOGY CORPORATION,** § § § § § | | |
| Defendant. § | | |

## **MEMORANDUM OPINION AND ORDER**

Before the court is Defendant McData Services Corporation's Rule 12(b)(6) Motion to Dismiss, filed May 31, 2006. Upon consideration of the motion, response, reply, record and applicable law, the court **denies** Defendant's Rule 12(b)(6) Motion to Dismiss.

## **I. BACKGROUND**

Plaintiff Kevin M. Ehringer Enterprises, Inc., d/b/a Data Center Systems ("DCS"), filed its Second Amended Complaint and Application for Preliminary Injunction ("complaint") on May 16, 2006. The complaint set forth two alternative claims: (1) that Defendant McData Services Corporation, f/k/a Computer Network Technology Corporation ("McData" or "CNT") breached a valid, binding contract between the parties; or, alternatively, (2) that McData fraudulently induced DCS to enter into this contract with no intention of performing its obligations under the contract. McData's Rule 12(b)(6) Motion to Dismiss asserts that DCS has failed to state a claim under either theory, and moves to dismiss both claims. The court will first

address the legal standard applicable to Rule 12(b)(6) motions to dismiss and then address the parties' contentions under each claim in turn.

### A. Legal Standard

A motion to dismiss for failure to state a claim under Red. R. Civ. P. 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowery v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-56 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). Stated another way, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims." *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowery*, 117 F.3d at 247. Courts will not strain to find inferences favorable to the plaintiff and will not accept conclusory allegations, unwarranted deductions or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).

### B.  Analysis

**1.  Breach of Contract**

The parties do not dispute the basic facts surrounding the formation of a contract between DCS and CNT.[1] Under the Agreement, DCS would distribute and eventually purchase two product lines from CNT – a Fiber Management System ("FMS") and Intelligent Fiber System ("IFS"), both products used in managing fiber optic data systems and collectively referred to in the Agreement as the "Products." DCS's complaint at 2; McData's (12)(b)(6) brief at 3. The Agreement obligated CNT to use its "best efforts" to market and sell the Products, and to transfer all rights to the Products to DCS after DCS had paid at least $1 million in royalties. Agreement, articles 1, 3 (attached as Exhibit A to DCS's complaint). The Agreement also obligated DCS to use its "best efforts" to market and sell the Products, as well as to produce, distribute, service and upgrade the Products, and to pay the $1 million in royalties within three years, the duration of the Agreement. Agreement, articles 1, 2. Additionally, the Agreement prohibited both parties from directly or indirectly developing, producing, distributing, or marketing products that compete with existing products of the other party. Agreement, articles

---

[1] Defendant McData acquired CNT, which was the predecessor in interest on the contract, titled a "Distributor, Development, Asset Sale, and Reseller Agreement" (referred to as the "Agreement"). Although McData has not answered DCS's complaint, its brief in support of its motion to dismiss ("McData's 12(b)(6) brief") acknowledges the existence of the Agreement, and its description of some terms matches those set forth by DCS. *See* McData's 12(b)(6) brief at 3-4.

**Memorandum Opinion and Order – Page 3**

2(3)(a), 3(1)(c).  DCS's complaint alleges that CNT breached the contract by failing to use its best efforts to market and sell the Products, and by developing, marketing and selling a competing product line, the UCS 2900.  *See generally*, DCS's complaint at 2–19.  DCS's complaint alleges that such breaches of the Agreement "have caused significant and substantial damage to DCS, which DCS now sues to recover," DCS's complaint at 19.

McData, through its Brief in Opposition to Application for Preliminary Injunction (McData's "P.I. brief"), asserts that, since the Agreement's execution, it has generated the "vast majority" of IFS and FMS sales, totaling more than $7 million in revenues for DCS.  McData's P.I. brief at 2, 8.  McData also asserts that its promotion and sales of the UCS 2900 does not violate the Agreement's non-compete provisions, because the 2900 is not a competing product line.  McData's P.I. brief at 8–10.  McData's 12(b)(6) motion does not rest on these responses to DCS's allegations, however.  Instead, McData's 12(b)(6) motion asserts that another provision of the Agreement, limiting the types of damages recoverable by the parties in the event of a dispute, bars any recovery for DCS, and thereby, defeats any claims for damages that DCS asserts in a breach of contract claim.  McData's 12(b)(6) brief at 4.

Article 8 of the Agreement sets forth the limitations on remedies and damages in all capital letters:

> a. BOTH PARTIES' LIABILITY FOR LOSS OR DAMAGE ARISING OUT OF THIS AGREEMENT OR IN CONNECTION WITH PRODUCTS PROVIDED UNDER THIS AGREEMENT, REGARDLESS OF THE FORM OF ACTION, IS LIMITED TO THOSE MEDIATED, ARBITRATED, OR COURT-AWARDED DIRECT DAMAGES OF PERSONAL INJURY, DEATH, OR DAMAGE TO TANGIBLE PROPERTY (EXCLUDING RECORDS OR DATA, STORED ELECTRONICALLY OR OTHERWISE) TO THE EXTENT CAUSED BY THE NEGLIGENCE OR INTENTIONAL WRONGDOING OF THAT PARTIES' EMPLOYEES PERFORMING UNDER THIS AGREEMENT, BUT IN NO EVENT WILL EXCEED THE GREATER OF THE AMOUNT PAID FOR PRODUCT(S) GIVING RISE TO THE CAUSE OF ACTION

> UNDER THIS AGREEMENT OR $1 MILLION.  THE THIRD PARTIES WHOSE SOFTWARE IS EMBEDDED IN THE SOFTWARE HAVE NO LIABILITY TO EITHER PARTY, WHETHER ARISING IN CONTRACT OR TORT OR OUT OF ANY ACTION FOR INFRINGEMENT.
> b.  IN NO EVENT, REGARDLESS OF THE FORM OF THE CAUSE OF ACTION, WILL EITHER PARTY BE LIABLE FOR ANY CLAIMS MADE AGAINST IT BY ANY PARTY, OR FOR ANY CLAIM BY THE OTHER PARTY OR ITS CUSTOMERS FOR LOST PROFITS, LOST SAVINGS, LOSS OF USE, OR LOSS OF OR DAMAGE TO RECORDS OR DATA, OR FOR ANY OTHER DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, HOWEVER CAUSED, EXCEPT FOR THOSE DIRECT DAMAGES SPECIFIED IN THE PRECEDING SECTION, WHETHER SUCH DAMAGES ARE FORESEEABLE AND EVEN IF THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

Agreement, article 8(3)(a), (b).  McData asserts that, based on these provisions limiting the types of damages recoverable, DCS has failed to state a claim for which relief could be granted, because DCS has failed to articulate a recoverable claim.  McData's 12(b)(6) brief at 4–7.  McData asserts that "[a]ll of DCS's alleged damages under its breach of contract claim . . . constitute damages for lost profits as a result of lost sales."  McData's 12(b)(6) brief at 4.  "This is the only logical element of damages which Plaintiff could claim and Plaintiff makes no effort to articulate any other form of damages."  *Id.*

The court will dismiss a complaint for failure to state a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegation." *Swierkiewicz*, 534 U.S. at 514.  This court cannot declare that no relief could be granted to DCS under any set of facts.  While McData has characterized DCS's breach of contract claim as a claim for lost profits, barred by the terms of their contract, the plain language of DCS's damage allegation is not limited to lost profits.  Instead, DCS has asserted, broadly, "significant and substantial damages."  DCS's complaint at 19.  Furthermore, this court cannot determine from the pleadings alone that the provisions limiting damages in the contract would apply, or that

**Memorandum Opinion and Order – Page 5**

DCS cannot recover any type of damages, whatsoever, consistent with the contract provisions. Accepting all the facts in DCS's complaint as true, and viewing them in the light most favorable to DCS, as this court is required to do, the court finds that DCS has alleged facts supporting its breach of contract claim. Accordingly, McData's rule 12(b)(6) Motion to Dismiss DCS's breach of contract claim is **denied**.

## 2. Fraud in the Inducement

DCS's complaint pleads, in the alternative, that "CNT's representations in the Agreement were false when made," such that DCS was fraudulently induced to enter into a contract with CNT, in which CNT "had no intention of performing." DCS's complaint at 20. McData's 12(b)(6) brief argues that DCS's fraudulent inducement claim fails because it is "based entirely upon an allegation that McData Services did not perform under the Agreement." McData's 12(b)(6) brief at 9. McData argues that DCS failed to allege any injury independent of the contract breaches previously alleged, and that absent independent injuries, parties to a contract may not recover in tort. *Id.* at 8–9.

McData correctly outlines the general rule under Texas law that a "failure to perform the terms of a contract is a breach of contract, not a tort." *See Formosa Plastics Corporation USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998).[2] Texas courts also hold, however, that "when one party enters into a contract with no intention of performing, that

---

[2]The court notes that the Agreement contains a choice-of-law provision stating that Minnesota law governs the Agreement. Article 8(5)(a). The parties have separately filed briefs outlining which law should apply to DCS's application for preliminary injunction, but have not articulated which law the court should apply to determine whether DCS has properly stated a fraudulent inducement claim. Since fraudulent inducement of a contract involves a tort outside the scope of the contract itself, the court determines it is not bound by the Minnesota choice-of-law provision, and may apply the law of this forum in this analysis. Furthermore, both parties have cited to Texas authority in their briefs and responses on the issue of fraudulent inducement, leaving the court to conclude that both parties would agree with the court's application of Texas law to this issue.

**Memorandum Opinion and Order – Page 6**

misrepresentation may give rise to an action in fraud," separate and apart from an action for breach of contract. *Id.* In short, "tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed under a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract." *Id.* at 47.

DCS's fraudulent inducement claim clearly alleges that "CNT had no intention of performing under the contract" at the time of entering into the Agreement. DCS's complaint at 20. DCS further alleges that it "relied on the false material representations of CNT and such reliance caused damages to DCS in an amount that exceeds the minimal jurisdictional limits of this court." *Id.* On its face, DCS's complaint states a valid cause of action when viewed in the light most favorable to DCS and with every doubt resolved in favor of DCS. Furthermore, DCS has pleaded specific facts relevant to its fraudulent inducement claim, not mere conclusory allegations, and meets the heightened pleading requirements for fraud allegations under Fed. R. Civ. P. 9. For example, DCS alleges that, unbeknownst to DCS, CNT started development of the competing 2900 product line months before entering into the Agreement, and unveiled the product at a sales conference in February 2004, just four months into the Agreement. DCS complaint at 11. DCS also alleges that various acts by CNT breached the terms of the Agreement, such as withholding customer or sales information, and excluding DCS from trade shows. *See* DCS's complaint at 14–18. Accepting the facts in the complaint as true, DCS's allegations support its alternative claim that "CNT never intended to perform under the Agreement." *See* DCS's complaint at 18. Accordingly, the court **determines** that DCS has properly stated a fraudulent inducement claim, and McData's 12(b)(6) Motion to Dismiss this claim is **denied**.

**Memorandum Opinion and Order – Page 7**

## II.  CONCLUSION

For the reasons stated above, the court **determines** that DCS has met the liberal pleading standards under Fed. R. Civ. P. 8.  This court cannot declare that DCS has failed to state a breach of contract claim upon which relief can be granted, nor can this court declare that DCS has failed to properly assert a fraudulent inducement claim.  Defendant McData Services Corproation's Rule 12(b)(6) Motion to Dismiss DCS's complaint on these grounds is, therefore, **denied**.

**It is so ordered** this 21st day of November, 2006.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge