IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEVIN M EHRINGER ENTERPRISES INC. d/b/a DATA CENTER SYSTEMS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:06-CV-812-L** |
| MCDATA SERVICES CORPORATION, f/k/a COMPUTER NETWORK TECHNOLOGY CORPORATION, | § § § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Plaintiff Kevin M. Ehringer Enterprises, Inc. d/b/a Data Center Systems' Motion for Partial Summary Judgment and Defendant McData Services Corporation's Motion for Partial Summary Judgment, each filed July 11, 2008. After careful consideration of the motions, responses, replies, briefs, record, and applicable law, the court **denies** Plaintiff Kevin M. Ehringer Enterprises, Inc. d/b/a Data Center Systems' Motion for Partial Summary Judgment and **grants** Defendant McData Services Corporation's Motion for Partial Summary Judgment.

### I.     Factual and Procedural Background

Plaintiff Kevin M. Ehringer Enterprises, Inc., d/b/a Data Center Systems ("DCS") filed a Second Amended Complaint and Application for Preliminary Injunction (the "Amended Complaint") on May 16, 2006. The Amended Complaint sets forth two claims: (1) Defendant McData Services Corporation, f/k/a Computer Network Technology Corporation ("McData" or "CNT") breached a valid, binding contract between the parties; or, alternatively, (2) McData

fraudulently induced DCS to enter into this contract with no intention of performing its obligations under the contract. The parties do not dispute the facts regarding the contract between them. Under the Distributor, Development, Asset Sale, and Reseller Agreement (the "Distributor Agreement"), DCS would distribute and eventually purchase two product lines from CNT – a Fiber Management System ("FMS") and Intelligent Fiber System ("IFS"). Both products are used in managing fiber optic data systems and are collectively referred to in the Distributor Agreement as the "Products." The Distributor Agreement obligated CNT to use its "best efforts" to market and sell the Products, and to transfer all rights to the Products to DCS after DCS had paid at least $1 million in royalties. The Distributor Agreement also obligated DCS to use its "best efforts" to market and sell the Products, to produce, distribute, service and upgrade the Products, and to pay the $1 million in royalties within three years, which is the duration of the Distributor Agreement. Additionally, the Distributor Agreement prohibited both parties from directly or indirectly developing, producing, distributing, or marketing products that compete with existing products of the other party.

DCS contends that McData fraudulently induced it into the Distributor Agreement and then breached the agreement. On July 11, 2008, DCS filed a motion for summary judgment on its fraudulent inducement claim and for partial summary judgment on its breach of contract claim. Also on July 11, 2008, McData filed a motion for partial summary judgment on DCS's breach of contract claim.

## II. Legal Standard – Motion for Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).

**Memorandum Opinion and Order – Page 3**

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. Discussion

#### A. Plaintiff Kevin M. Ehringer Enterprises, Inc. d/b/a Data Center Systems' Motion for Partial Summary Judgment

DCS moves for summary judgment on its fraudulent inducement claim and for partial summary judgment on its breach of contract claim. The court addresses each claim in turn.

##### 1. Fraudulent Inducement

DCS contends that it is entitled to summary judgment on its fraudulent inducement claim because it established each of the elements of the claim and the limitation of damages provision does not apply to this clam. McData counters that there are genuine issues of material fact regarding DCS's fraudulent inducement claim and whether DCS ratified any of the alleged fraudulent misrepresentations.

The parties agree, and the court previously determined, that Texas law applies to DCS's fraudulent inducement claim. Under Texas law, to maintain a cause of action for fraudulent inducement, a party must show the following:

> (1) a material representation was made;
> (2) the representation was false;
> (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion;

**Memorandum Opinion and Order – Page 4**

(4) the speaker made the representation with the intent that the other party should act upon it;
(5) the party acted in reliance on the representation; and
(6) the party thereby suffered injury.

*In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). "A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986). "Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Id.*

DCS argues that McData falsely represented that it would use its best efforts to promote, market, and sell the FMS and IFS products to its existing customers and that it would not develop, produce, distribute, or market products in competition with the FMS and IFS products. *See* Pl.'s Mot. Summ. J. Br. 31. DCS also argues that its fraudulent inducement claim is supported by evidence that McData denied the existence of its unambiguous contractual obligations.

According to DCS, the first alleged misrepresentation, that McData would use its best efforts to promote, market, and sell the FMS and IFS data center products to its existing customers, constitutes fraud because McData had no intention of doing so. McData counters that it fully intended to perform its obligations under the agreement. The dispute between the parties on this issue is nothing more than a failure to agree upon the definition of best efforts. This term was not defined in the parties' agreement.[1] DCS cites *Walser Auto Sales, Inc. v. City*

---

[1] The Distributor Agreement contains a choice of law provision, which specifies that Minnesota law governs its enforcement and interpretation. Therefore, the court looks to Minnesota law to determine the meaning of terms used in the agreement.

**Memorandum Opinion and Order – Page 5**

of *Richfield*[2] and contends that the best effort standard it uses, "surpassing all others in excellence, achievement, or quality: most excellent," articulates the best efforts standard under Minnesota law. The court disagrees.

In *Walser*, the court determined whether the city complied with a state statute such that it was authorized to determine whether a property is structurally substandard without an interior inspection. To comply with the statute, the city was first required to be unable to gain access to the property after using use its best efforts to obtain permission from the party that owns or controls the property. In this context, the court relied on the third edition of the American Heritage Dictionary's definition of "best" as "surpassing all others in excellence, achievement, or quality: most excellent." *Id.* It determined that the city had not met this definition. DCS cites no cases, and the court finds none, that indicate that this is the best efforts standard for all purposes under Minnesota law. To the contrary, subsequent Minnesota cases determining whether a party used "best efforts" recognize that no uniform "best effort" standard exists. *See Woodlake VEF-IV, LLC v. Coop. Agency, Inc.*, No. A07-577, 2008 WL 763229 at *4 (Minn. App. March 25, 2008); *In re Wren*, 699 N.W.2d 758, 767 (Minn. 2005) (Anderson, J., dissenting) ("The contract and the record before us are decidedly unhelpful in unraveling what 'best efforts' might mean."); *Fritz v. Schroeder*, No. C8-02-1521, 2003 WL 21264495 at * 2 (Minn. App. June 03, 2003) (recognizing lack of case law defining "best efforts" in context of making title marketable). Because there is no "best efforts" standard, the trier of fact must determine what the parties intended the term to mean and whether McData met its obligations based upon that meaning. Therefore, a genuine issue of material fact exists regarding McData's

---

[2] 635 N.W.2d 391, 401 (Minn. Ct. App. 2001), *aff'd*, 644 N.W.2d 425 (Minn. 2002).

**Memorandum Opinion and Order – Page 6**

intent to use its "best efforts," and DCS is not entitled to judgment as a matter of law on this theory of its fraudulent inducement claim.

DCS also contends that McData fraudulently induced it into the agreement by promising, with no intent of following through, that it would not develop, produce, distribute, or market products in competition with the FMS and IFS data center products. According to DCS, McData began developing a competing data product line, the USC-2900, before the agreement was executed. McData contends that there is a genuine issue of material fact as to whether this product competes with DCS's data center products. The court agrees. DCS presents evidence that the USC-2900 competed with the FMS and IFS data center products. *See* Shaffer Dep. 58:25-61:22, DCS's Mot. Partial Summ. J. App. 1249-1252. McData presents evidence that the UCS-2900 "has vastly different functionality than FMS and IFS" and that it "is not competitive with FMS and IFS." McData Resp. App. 25. Because a reasonable jury can return a verdict for either party based upon its evaluation of this and other evidence, a genuine issue of material fact exists. The court cannot make a credibility determination or weigh evidence in ruling on a motion for summary judgment. Accordingly, DCS is not entitled to judgment as a matter of law on this theory of its fraudulent inducement claim.

DCS further contends that McData "denied the undisputed existence of unambiguous contractual obligations" and that such conduct supports its fraudulent inducement claim. DCS's Mot. Partial Summ. J. 34. Assuming *arguendo* that McData has made such a denial, Texas "[c]ourts have held [that] a party's denial that he ever made a promise is *a factor* showing no intent to perform when he made the promise." *Spoljaric*, 708 S.W.2d at 435 (emphasis added). This conduct is merely a factor that tends to show lack of intent. The trier of fact would evaluate the totality of McData's conduct, including this factor, to determine McData's intent. Because

**Memorandum Opinion and Order – Page 7**

the court cannot weigh evidence in ruling on a motion for summary judgment, a genuine issue of material fact exists regarding McData's intent to use its "best efforts," and DCS is not entitled to judgment as a matter of law on this theory of its fraudulent inducement claim. DCS cannot prevail on its fraudulent inducement claim if it fails to satisfy any one of the elements of the claim; therefore, the court does not reach the remaining elements of DCS's fraudulent inducement claim.

2. **Breach of Contract**

DCS contends that it is entitled to summary judgment on its breach of contract claim because of the following: (i) McData failed to use its best efforts to promote, market, and sell DCS's products; (ii) McData failed to use its best efforts to permit DCS to visit McData's customers; (iii) McData failed to use its best efforts to participate in trade shows or local CNT events with DCS; and (iv) McData competed against DCS's products. DCS also contends that the limitation of damages provision does not apply to its breach of contract claim. McData counters that there are genuine issues of material fact regarding its compliance with the "best efforts" provision of the contract, that it did not breach the non-competition provisions of the contract, and that the limitation of damages provision bars the relief that DCS seeks to recover for this claim. Because McData's final argument - that the limitation of damages provision bars the relief that DCS seeks to recover for this claim- is dispositive, the court addresses it only.

The court first determines whether Minnesota common law, which governs contracts involving the provision of services, or the Minnesota Uniform Commercial Code ("UCC"), which governs contracts involving the sale of goods, governs the enforceability of the limitation of damages provision at issue in this case. The Distributor Agreement involves both the provision of services and the sale of goods. Under Minnesota law, the "predominant purpose"

test is used to determine whether the UCC applies to these types of hybrid contracts. *Vesta State Bank v. Independent State Bank*, 518 N.W.2d 850, 854 (Minn. 1994). The predominant purpose test requires a determination of whether the predominate purpose "is the rendition of service, with goods incidentally involved (e.g., contract with artist for painting) or [the sale of goods], with labor incidentally involved (e.g., installation of a water heater in a bathroom)." *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir. 1974); *McCarthy Well Co. v. St. Peter Creamery, Inc.*, 410 N.W.2d 312, 316 (Minn. 1987) (adopting "predominant factor" test discussed in *Bonebrake*).

The parties entered into the Distributor Agreement based on their desires that they would do the following:

> (1) DCS [would] produce and distribute CNT's FMS and IFS products, as each is described in Attachment A ("Products");
> (2) DCS [would] develop and upgrade the IFS products, with CNT's manufacturing assistance, if requested;
> (3) DCS [would] acquire the assets ("Assets," as defined in Article 6, Section 3, below) of the Products subsequent to meeting certain sales goals; and
> (4) CNT [would] resell and jointly market with DCS the Products, both before and after the transfer of the Assets.

DCS's Mot. Partial Summ. J. App. 1. DCS's production and distribution of McData's products is a transaction involving the sale of goods, with labor incidentally involved, because the products are being produced for the sole purpose of being distributed to customers. DCS's development and upgrade of IFS products is a transaction involving only services. DCS's acquisition of the assets, McData's resell of the products, and the parties' joint marketing of the products is a transaction involving the sale of goods. Three of the four stated purposes of the Distributor Agreement involve the sale of goods. Therefore, the predominant purpose of the

agreement was the sale of goods, with labor incidentally involved, and the UCC applies to the agreement.

The court now turns to the enforceability of the limitation of damages provision. The portion of the Minnesota UCC dealing with limitations of remedies reads as follows:

> (1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,
>
>> (a) the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and
>>
>> (b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
>
> (2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter.
>
> (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Minn. Stat. Ann. § 336.2-719 (West 1966). McData contends that the remedy contained in the Distributor Agreement's limitation of remedies and damages provision is the sole remedy available to DCS and that the damages that DCS seeks in this action are excluded under the provision. DCS does not dispute that the limitation of remedies and damages provision is the sole remedy available under the contract. It instead contends that the provision is unenforceable because it fails its essential purpose and exonerates McData for intentional and willful acts.

**Memorandum Opinion and Order – Page 10**

Article 8 of the Agreement sets forth the limitations on remedies and damages as follows:

a. BOTH PARTIES' LIABILITY FOR LOSS OR DAMAGE ARISING OUT OF THIS AGREEMENT OR IN CONNECTION WITH PRODUCTS PROVIDED UNDER THIS AGREEMENT, REGARDLESS OF THE FORM OF ACTION, IS LIMITED TO THOSE MEDIATED, ARBITRATED, OR COURT-AWARDED DIRECT DAMAGES OF PERSONAL INJURY, DEATH, OR DAMAGE TO TANGIBLE PROPERTY (EXCLUDING RECORDS OR DATA, STORED ELECTRONICALLY OR OTHERWISE) TO THE EXTENT CAUSED BY THE NEGLIGENCE OR INTENTIONAL WRONGDOING OF THAT PARTIES' (sic) EMPLOYEES PERFORMING UNDER THIS AGREEMENT, BUT IN NO EVENT WILL EXCEED THE GREATER OF THE AMOUNT PAID FOR PRODUCT(S) GIVING RISE TO THE CAUSE OF ACTION UNDER THIS AGREEMENT OR $1 MILLION. THE THIRD PARTIES WHOSE SOFTWARE IS EMBEDDED IN THE SOFTWARE HAVE NO LIABILITY TO EITHER PARTY, WHETHER ARISING IN CONTRACT OR TORT OR OUT OF ANY ACTION FOR INFRINGEMENT.
b. IN NO EVENT, REGARDLESS OF THE FORM OF THE CAUSE OF ACTION, WILL EITHER PARTY BE LIABLE FOR ANY CLAIMS MADE AGAINST IT BY ANY PARTY, OR FOR ANY CLAIM BY THE OTHER PARTY OR ITS CUSTOMERS FOR LOST PROFITS, LOST SAVINGS, LOSS OF USE, OR LOSS OF OR DAMAGE TO RECORDS OR DATA, OR FOR ANY OTHER DIRECT, INDIRECT, SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, HOWEVER CAUSED, EXCEPT FOR THOSE DIRECT DAMAGES SPECIFIED IN THE PRECEDING SECTION, WHETHER SUCH DAMAGES ARE FORESEEABLE AND EVEN IF THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

DCS's Mot. Partial Summ. J. App. 13. DCS contends that because article 8(3)(a) does not provide a contract-based remedy, it should not be evaluated in the exculpatory clause analysis. It also argues that the remaining portion of the limitation on remedies and damages clause, article 8(3)(b), is unenforceable because it releases McData from liability for all acts, including acts that were intentional, willful, and wanton. In essence, DCS argues that the exclusive remedy stated in article 8(3)(a) fails of its essential purpose, that it should be ignored, and that the remaining provision should be evaluated independently to determine its enforceability. Therefore, the court first considers whether article 8(3)(a) failed of its essential purpose.

Under Minnesota law, "[a]n exclusive remedy fails of its essential purpose if circumstances arise to deprive the limiting clause of its meaning or one party of the substantial value of its bargain." *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349, 356 (Minn. 1977) (citing Minn. Stat. Ann. § 336.2-719, UCC Comment 1). "[W]here an exclusive remedy (such as a warranty to repair or replace) fails of its essential purpose, it may be ignored, and other clauses in the contract which limit remedies for breach may be left to stand or fall independently of the stricken clause." *International Fin. Serv., Inc. v. Franz*, 534 N.W.2d 261, 267 (Minn. 1995).

The court determines that article 8(3)(a) did not fail of its essential purpose. "The U.C.C. encourages agreements in commercial transactions, including warranties and limitations." *Hapka v. Paquin Farms*, 458 N.W.2d 683, 688 (Minn. 1990). This is a commercial transaction in which the parties, after evaluating their risks, agreed to include a limitation of damages and remedies clause in the contract. This is not a situation where the limitations of damages provision is one-sided and benefits only one party. The provision at issue works to the mutual benefit and the mutual detriment of both parties. The liability for both DCS and McData is limited by the provision. Moreover, any damages sought by either DCS or McData are subject to the provision. This is what the parties bargained for, as evidenced by their execution of the contract. No circumstances have arisen since the execution of the contract that either deprives the limiting clause of its meaning or deprives DCS of the substantial value of its bargain. Therefore, article 8(3)(a) of the limitation on damages and remedies clause did not fail of its essential purpose. Accordingly, the court evaluates article 8(3)(a) in conjunction with article 8(3)(b) to determine whether the clause is enforceable.

The Minnesota UCC allows consequential damages to be limited or excluded unless such limitation or exclusion is unconscionable. Minn. Stat. Ann. § 336.2-719(3). DCS contends that the unconscionability of the provision is irrelevant and that the provision is unenforceable because it purports to relieve McData from all liability for intentional, willful or wanton contractual breaches of the agreement. The court disagrees.

As the court stated in its November 27, 2006 order, article 8(3)(a) clearly contemplates personal or property damages resulting from "negligence or intentional wrongdoing," and attempts to limit recovery of such damages to the $1 million value of the contract. Article 8(3)(b) unambiguously bars both parties' recovery for any lost profits, an entirely different category of damages. Therefore, the limitation on damages and remedies provision is not a complete bar on damages. DCS argues that because article 8(3)(a) does not allow for damages for direct, indirect, special, consequential, and incidental damages (what DCS lists as examples of "contractual damages"), article 8(3)(b) is the only provision relevant to its damages allegations. DCS cites no case law, and the court finds none, that requires a limitations of damages provision to allow for damages other than personal injury, death, or damage to tangible property. That DCS is now unhappy with the damages to which it agreed that the parties would be limited is no reason for the court to disregard this provision of the contract. DCS also argues that article 8(3)(b) is unenforceable because it bars all contract damages, however caused. To ascertain the intent of article 8(3)(b), however, consideration of the language after the words "however caused" is required. Article 8(3)(b) bars recovery for "direct, indirect, special, incidental, or consequential damages, however caused, **except for those direct damages specified in the preceding section**." DCS's Mot. Partial Summ. J. App. 13. Again, article 8(3)(b) does not operate as a complete bar to damages, it operates to restrict all damages to those

**Memorandum Opinion and Order – Page 13**

specified in article 8(3)(a), and the court will not simply disregard the damages available to DCS under article 8(3)(a) because it now believes that they are insufficient.

DCS seeks domestic lost profits, international lost profits, and reliance damages as damages for its breach of contract claim. McData Resp. App. 56. These damages fall squarely within the types of damages limited by the Distributor Agreement. Therefore, the limitation of damages provision bars the relief that DCS seeks to recover for its breach of contract claim. Because DCS is unable to establish that it was damaged as a result of McData's alleged breach, it fails to establish that no genuine issue of material fact exists on its breach of contract claim.[3] Therefore, DCS is not entitled to judgment as a matter of law on this claim.

### B. Defendant McData Services Corporations' Motion for Partial Summary Judgment

McData moves for summary judgment on DCS's breach of contract claim. It contends that this claim fails as a matter of law because DCS is unable to establish recoverable damages that can be attributed to any alleged breach. The court agrees. To recover on its breach of contract claim, DCS must show, *inter alia*, that it was damaged as a result of McData's alleged breach. As previously stated, DCS is unable to establish this element of its cause of action. Therefore, no genuine issue of material fact exists regarding DCS's breach of contract claim, and McData is entitled to judgment as a matter of law on this claim.

### IV. Conclusion

For the reasons herein stated, the court determines that a genuine issue of material fact exists regarding DCS's fraudulent inducement claim, and DCS fails to establish that no genuine

---

[3]To recover for breach of contract, a plaintiff must show "(1) the existence of a valid contract between the plaintiff and defendant, (2) the plaintiff performed, (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach." *James M. Clifton, Inc. v. Premillenium, Ltd.*, 229 S.W.3d 857, 859 (Tex. App.–Dallas 2007, no pet.).

issue of material fact exists regarding its breach of contract claim. Therefore, the court **denies** Plaintiff Kevin M. Ehringer Enterprises, Inc. d/b/a Data Center Systems' Motion for Partial Summary Judgment. The court also determines that no genuine issue of material fact exists regarding DCS's breach of contract claim. Therefore, the court **grants** Defendant McData Services Corporation's Motion for Partial Summary Judgment.

The sole issue remaining for trial is the fraudulent inducement claim. The parties are to notify the court in writing by **March 13, 2009**, whether this case can be resolved without the necessity of a trial. Given the age of this case, the court will promptly set the matter for trial if it is not otherwise resolved.

**It is so ordered** this 4th day of March, 2009.

                                          Sam A. Lindsay
                                          United States District Judge