IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **KEVIN M. EHRINGER ENTERPRISES,** § <br> **INC., d/b/a DATA CENTER SYSTEMS** § <br> § <br> **Plaintiff,** § <br> § <br> v.                                                           § <br> § <br> **McDATA SERVICES CORPORATION,** § <br> **f/k/a COMPUTER NETWORK** § <br> **TECHNOLOGY CORPORATION** § <br> § <br> **Defendant.** § | **Civil Action No. 3:06-CV-812-L (BH)** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the order of reference dated October 5, 2011, before the Court for recommendation is *Plaintiff's Motion to Retax Costs or, in the Alternative, Motion to for Leave to Conduct Limited Discovery and Brief in Support*, filed September 29, 2011 (doc. 247). Based on the relevant filings and applicable law, the motions should be **DENIED**.

**I. BACKGROUND**

In 2006, Plaintiff Kevin M. Mehringer Enterprises Inc. d/b/a Data Center Systems (Plaintiff) sued McData Services Corporation f/k/a Computer Network Technology Corporation (Defendant) for breach of contract and fraudulent inducement. (doc. 6.) The district court granted summary judgment for Defendant on the breach of contract claim in March 2009. (doc. 131.) In August 2009, a two-phase jury trial on the fraudulent inducement claim began. (doc. 206.) At the end of the first phase, the jury found for Plaintiff and awarded it $12,530,000.00 in compensatory damages. (*Id.*) The jury declined to award punitive damages at the end of the second phase. (*Id.*) In February 2010, the district court entered judgment for Plaintiff and ordered all allowable and reasonable costs taxed against Defendant. (doc. 207.) The clerk subsequently taxed $66,236.71 in costs. (doc. 216.)

In March 2010, Defendant appealed the district court's judgment, and the Fifth Circuit reversed and remanded the case to the district court to render judgment in Defendant's favor in July 2011. (docs. 208, 241.) The district court entered a final judgment for Defendant on August 23, 2011. (doc. 242.) The following month, the clerk taxed $423,115.79 in costs against Plaintiff. (docs. 245, 246.) Plaintiff then moved to re-tax costs, and in the alternative, to conduct limited discovery. (doc. 247.) The parties conducted a face-to-face meeting pursuant to a court order and filed a joint submission listing their positions on the issues raised in the motions to retax costs and for limited discovery. (docs. 252, 258.) The motions are now ripe for recommendation.

## II.  MOTION TO RETAX COSTS

Rule 54 of the Federal Rules of Civil Procedure Provides that a prevailing party in a civil action is entitled to recover its costs "unless the court otherwise directs." Fed. R. Civ. P. 54(d). This provision creates "a strong presumption that the prevailing party will be awarded costs." *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985) (citing *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981)). The presumption, however, is not irrebutable, and the district court retains the discretion not to award costs to a prevailing party. *See United States v. D.K.G. Appaloosas, Inc.*, 829 F.2d 532, 539 (5th Cir. 1987). Taxable costs include: (1) fees paid to the clerk and marshal; (2) fees paid to the court reporter or stenographer for all or part of the stenographic transcript necessarily obtained for use in the case; (3) witness fees and related expenses; (4) printing costs; (5) fees for exemplification and copies of papers necessarily obtained for use in the case; and (6) fees of court appointed experts, interpreters, and special interpretation services.  28 U.S.C. §1920.

Rule 39 of the Federal Rules of Appellate Procedure similarly provides that if a judgment is reversed on appeal, costs are taxed against the appellee.  Fed. R. App. P. 39(a)(3).  Costs on appeal that

2

are taxable in the district court include: (1) costs for the preparation and transmission of the record; (2) costs of the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal. Fed. R. App. P. 39(e). A district court may decline to award statutory costs but may not award costs omitted from the statute. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987); *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993). The party seeking recovery of its costs bears the burden of proving their reasonableness and necessity. *See Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994); *Fogleman v. ARAMCO*, 920 F.2d 278, 285-86 (5th Cir. 1991).

Here, the clerk taxed $423,115.79 in costs against Plaintiff, consisting of $50,959.39 for printed or electronically recorded transcripts necessarily obtained for use in the case, $967.46 for witness fees, $84,673.10 for exemplification fees and the costs of making copies necessarily obtained for use in the case, $609.84 for costs shown on the mandate of the court of appeals, and $285,906.00 in supersedeas bond premiums. (doc. 246 at 1.) Plaintiff originally moved to retax $74,954.87 in exemplification fees, $9,385.00 in nontaxable labor charges included in the "exemplification and copying" costs, $967.46 in witness fees, and $285,906.00 in supersedeas bond premiums. (*See* doc. 247.) At the face-to-face meeting, Defendant agreed to deduct $9,385.00 in labor charges and Plaintiff withdrew its opposition to $967.46 in witness fees. (doc. 258 at 1.) Remaining at issue are the exemplification fees and the supersedeas bond premiums. (*See* doc. 258.)

**A. Exemplification Costs**

Plaintiff argues that Defendant did not incur or pay $74,954.87 in exemplification fees because its parent, Brocade Communication Systems, Inc. (Brocade), a non-party, paid those costs. (doc. 258 at 2-6.) It contends that Rule 54(d) awards costs to a "prevailing party." (*Id.* at 2.)

3

On its face, Rule 54(d) merely provides that costs "should be allowed to a prevailing party" and does not create an exception for a prevailing party whose costs are paid by another. *See* Fed. R. Civ. P. 54(d)(1). Although the Fifth Circuit has not specifically addressed whether costs paid by a non-party should be taxed, it has explained that Rule 54(d) is concerned with "litigation costs – costs which usually would not have been incurred but for the dispute to which they are attached." *See United States v. D.K.G. Appaloosas, Inc.*, 829 F.2d 532, 539 (5th Cir. 1987). One court in this circuit has held that as long as the expenses were incurred for the benefit of the prevailing parties, the prevailing parties are entitled to their reimbursement. *Randall v. Chevron, U.S.A., Inc.*, 1992 WL 18690, at *1 (E.D. La. July 30, 1992) (allowing recovery of costs where the prevailing party's counsel paid them). Courts in other jurisdictions appear to agree. *See e.g. King v. Gowdy*, 2008 WL 1820837, at *2 (E.D. Mich. Apr. 22, 2008) (awarding costs where the court itself paid them through its pro bono program); *Manor v. Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639-40 (11th Cir. 1991) (awarding costs even though the prevailing party's insurance company paid them); *Moore v. Mercier*, 2000 WL 1511402, at *1 (8th Cir. Oct. 12, 2000) (awarding costs where the state paid the costs on behalf of the prevailing party). Because the weight of authority is persuasive, and Plaintiff has not provided any authority for its position that costs should be denied if they are incurred or paid by a non-party, the Court should find that the expenses incurred for the benefit of prevailing parties are recoverable.

It is undisputed that Brocade incurred the exemplification costs for the benefit of Defendant, its wholly owned subsidiary, and that the costs would not have been incurred but for this action. Plaintiff's motion to retax $74,954.87 in exemplification fees should therefore be **DENIED**.

**B. Supersedeas Bond Premiums**

Plaintiff next argues that the supersedeas bond premiums are not recoverable because Defendant

4

did not incur or pay those premiums, and because it did not opt for free or less expensive alternatives to an uncollateralized supersedeas bond. (doc. 258 at 2-9.) To the extent the premiums are recoverable, Plaintiff questions the reasonableness of their amount. (*Id.* at 9-14.)

### 1.  Incurred or Paid

The first issue is whether Defendant can recover the supersedeas bond premiums even though they were incurred or paid by Brocade. (doc. 258 at 2-6.)

Like Rule 54(d), Rule 39 does not create an exception for costs incurred or paid by a non-party, or limit recovery to those costs that a prevailing party has incurred or paid itself. Additionally, Plaintiff has not provided, and the court can not find, any authority showing that such a limitation or exception exists. Plaintiff's motion to retax the supersedeas bond premiums based on its argument that Defendant did not incur or pay the premiums should therefore be **DENIED**.

### 2.  Free or Less Expensive Alternatives

The second issue for determination is whether Defendant could have used free or less expensive alternatives to posting an uncollateralized supersedeas bond. (doc. 258 at 5-9.)

Under Fed. R. Civ. P. 62, an appellant can stay the execution of a money judgment by posting a supersedeas bond approved by the district court. *See* Fed. R. Civ. P. 62(d). In March 2010, after entry of judgment in Plaintiff's favor, Defendant discussed with Plaintiff the possibility of staying execution of the judgment by a letter of credit in lieu of a supersedeas bond. (doc. 248 at 9, 14.) Defendant also moved for alternative security in the form of a letter of credit instead of a supersedeas bond. (doc. 210.) It was concerned that a surety on a supersedeas bond would require collateral, most probably a letter of credit given the large commercial transaction, and would cause it to incur letter of credit fees in addition to the supersedeas bond premiums. (*Id.*)

5

Soon after Defendant filed the motion, the parties filed a joint motion for an agreed order regarding security to stay enforcement of final judgment. (doc. 213.) The joint motion announced the parties agreement that Plaintiff could post as security an irrevocable standby letter of credit or a bond in the amount of $17,500,000.00[1], and requested entry of an agreed order to that effect. (*See id.*) The district court entered the agreed order and stayed the judgment as long as Defendant provided security in the form of either a letter of credit or a supersedeas bond. (doc. 214.) On April 21, 2010, Defendant informed Plaintiff of Brocade's determination that securing the judgment on appeal with a supersedeas bond was the best alternative. (doc. 248 at 12.) On May 5, 2010, Brocade posted a bond in the amount of $17,500,000.00 to stay the judgment. (doc. 219.)

Plaintiff now questions whether the supersedeas bond was a less expensive alternative to a letter of credit. (doc. 258 at 5-8.) Defendant responds that the supersedeas bond premiums for a period of more than a year, amounted to $285,906.00, compared to the $546,875.00 it would have incurred in total fees for just the first year of a letter of credit. (*Id.* at 12.) It explains that the cost of issuing a letter of credit under Brocade's credit agreement with Bank of America and Morgan Stanley is 3.125%[2] of the amount covered by the letter of credit (3.125% x 17,500,000.00 = $546,875.00). (docs. 258 at 12; 258-1 at 2.) Since Plaintiff approved a letter of credit of credit or a supersedeas bond as the means for securing the judgment, and Defendant chose to proceed with the less expensive alternative, Plaintiff cannot now complain that Defendant made an imprudent and costly choice.

Plaintiff also questions Defendant's "business decision" not to deposit $17.5 million cash in the court's registry instead of the supersedeas bond, and argues that Brocade's business decision should

---

[1] This amount consists of the entire judgment in this case plus 20%, and is consistent with Local Rule 62.1 which requires that a supersedeas bond must be in the amount of the judgment plus an additional 20%.

[2] This includes a letter of credit fee of 3% plus an administrative fee of 0.125%. (doc. 258-1 at 2.)

6

not allow it to shift nearly $300,000.00 in bond premiums to Plaintiff. (doc. 256 at 6-7, n.6.) Defendant contends that given the financial crisis and credit crunch of 2008 and 2009, it would have been imprudent cash management for Brocade to make a cash deposit of $17.5 million when its cash position had decreased from $496.5 million at the end of the quarter ending January 31, 2010, to $287.2 million at the end of the quarter ending April 30, 2010, and its cash balance from its domestic operations at the time averaged between $25 million and $75 million. (docs. 258 at 12; 258-1 at 2-3.) Defendant states that the rest of the cash available from its international operations was not accessible without adverse tax consequences. (doc. 258-1 at 2-3.) It appears, based on this evidence, that Defendant had to make a very difficult business decision in uncertain economic times with tight credit markets and limited dispensable cash. While it seems unfair to allow Defendant to shift the costs of its business decision to Plaintiff, it would be equally unfair to allow Brocade's business to suffer adverse consequences from an unsuccessful lawsuit brought by Plaintiff.

In any case, Plaintiff has not provided, and the court cannot find, any binding authority to show that a court should decline to award appellate costs, taxable by statute and allowed by an agreed order, based on the availability of alternatives that may decrease direct costs but may also increase indirect costs to a prevailing party. Plaintiff's motion to retax the bond premiums based on its second argument should also be **DENIED**.

### 3. Reasonableness

The third issue for determination is whether the amount of the supersedeas bond premiums is reasonable. (doc. 258 at 9-14.)

Plaintiff mainly questions the 1.25% rate used to calculate the premiums on the supersedeas bond and argues that supersedeas bond premium rates may be as little as 0.5% annually if they are

7

fully collateralized. (doc. 258 at 9-11.) Defendant explains that posting a collateralized bond would have been more expensive than an uncollateralized bond, as it would have most probably involved a letter of credit as collateral, and would have resulted in letter of credit fees in addition to bond premiums. (*Id.* at 12-13.) Defendant further argues that given the financial crisis and credit crunch of 2008 and 2009, it would have been imprudent cash management to pledge $17.5 million as cash collateral for the supersedeas bond when its cash position was decreasing and it had a limited cash balance from its domestic operations in uncertain economic times. (docs. 258 at 12; 258-1 at 2-3.)

Defendant supports its position with a declaration from its insurance and surety broker stating that using either cash or a letter of credit as collateral can increase the net cost of the supersedeas bond because the lower premium of collateralized loans can be more than offset by the added costs of the letter of credit or the internal costs and effects of the reduction of borrowing capacity. (doc. 258-1 at 5.) The surety broker states that he looked at a list of sureties approved to issue bonds for use in federal court and determined that RLI Insurance Company (RLI) offered a supersedeas bond at the premium rate of 1.25% and did not require cash collateral or a letter of credit, only corporate indemnity. (*Id.*) The surety broker also states that, in his experience, supersedeas bonds issued solely on corporate indemnity have a premium rate of 2% for companies of Brocade's size and can go upto 3% for smaller companies. (*Id.*) The surety broker recommended RLI because it offered the best price for a bond issued solely on a corporate indemnity. (*Id.*)

Defendant also offers the affidavit of RLI's vice president and surety manager, who states that rates for uncollateralized supersedeas bonds on monetary judgments range between 1.25% to 2.5%, and that sureties underwriting bonds for judgment across the United States have used that range of rates for many years. (*Id.* at 7-8.) RLI's surety manager states that the rate obtained in this

case is "one of the lowest rates for an uncollateralized supersedeas bonds." (*Id.*)  Although he acknowledges that premium rates for fully collateralized bonds are generally about one-half of the rates for uncollateralized bonds, he states that a surety requiring full collateral for a supersedeas bond generally requires the judgment debtor to post an irrevocable letter of credit in an amount equal to 100% of the amount of the supersedeas bond, and does not accept stocks, bonds, or equipment as collateral. (*Id.* at 8.)

Given this evidence, Defendant has shown that an uncollateralized bond with a premium rate of 1.25% was reasonable under the circumstances.  Plaintiff's motion to retax the supersedeas bond premiums should therefore be **DENIED**.

### III. MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY

Plaintiff contends that it would be patently unfair to assess almost $300,000 in supersedeas bond premiums against it without allowing it to conduct limited discovery regarding Defendant's efforts to limit costs in superseding the judgment. (doc. 258 at 14.) In support of its contention, Plaintiff presents only speculation that Brocade could have spent less on a supersedeas bond or a letter of credit. Defendant, on the other hand, provides ample evidence that it carefully considered its options and chose to proceed with a relatively inexpensive option of posting an uncollateralized supersedeas bond. Plaintiff's motion for leave to conduct limited discovery on the issue should therefore be **DENIED**.

### IV. RECOMMENDATION

Plaintiff's motions to retax costs and for leave to conduct limited discovery should both be **DENIED**[3], and Defendant should be awarded $413,730.79 in costs as summarized below:

---

[3] The motion was considered only with respect to the issues remaining for determination after the face-to-face meeting.

| | |
|---|---|
| printed or electronically recorded transcripts necessarily obtained for use in the case | $50,959.39 |
| fees for witnesses | $967.46 |
| fees for exemplification and the costs of making copies of any material where the copies are necessarily obtained for use in the case | $75,288.10 (the original $84,673.10 minus the $9,385.00 that Defendant agreed to deduct at the face-to-face meeting) |
| costs as shown on Mandate of Court of Appeals | $609.84 |
| supersedeas bond premiums | $285,906.00 |
| **TOTAL** | **413,730.79** |

**SO RECOMMENDED on this 30th day of April, 2012.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

  A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

10