IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KEVIN M. EHRINGER ENTERPRISES INC. d/b/a DATA CENTER SYSTEMS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:06-CV-812-L** |
| MCDATA SERVICES CORPORATION, f/k/a COMPUTER NETWORK TECHNOLOGY CORPORATION, | § § § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff's Motion to Retax Costs or, in the Alternative, Motion for Leave to Conduct Limited Discovery ("Motion"), filed September 29, 2011. The Motion was referred to Magistrate Judge Irma Carrillo Ramirez, who entered the Findings, Conclusions and Recommendation of the United States Magistrate Judge ("Report") on April 30, 2012, recommending that the Motion be denied. Plaintiff Kevin M. Ehringer Enterprises Inc. d/b/a Data Center Systems ("Plaintiff") filed objections to the Report on May 14, 2012. For the reasons explained herein, the court determines that the findings and conclusions of the magistrate judge are correct.

**I.     Background**

This case was removed from state court on May 5, 2006. On August 3, 2009, the jury found in favor of Plaintiff on its fraudulent inducement claim and on August 4, 2009, the jury awarded Plaintiff $12,530,000 in compensatory damages. A judgment in favor of Plaintiff was entered on February 25, 2010, for the compensatory damages awarded by the jury plus $1,814,627.26 in

**Memorandum Opinion and Order – Page 1**

prejudgment interest on the award of past compensatory from March 29, 2006, until September 7, 2009, with additional prejudgment interest to accrue at the rate of $1,442.47 per day until the day before entry of judgment as provided by law. Defendant McData Services Corporation, f/k/a Computer Network Technology Corporation ("Defendant") filed a notice of appeal on March 1, 2010, and the Fifth Circuit reversed and remanded the case in July 2011, to this court to render judgment in favor of the Defendant. On September 2, 2011, Defendant filed a Bill of Costs, seeking recovery for $423,115.79 in costs. The clerk subsequently taxed $423,115.79 in costs against Plaintiff, and Plaintiff filed a motion in opposition to Defendant's Bill of Costs on September 29, 2011.

The costs taxed included $50,959.39 for printed or electronically recorded transcripts, $967.46 for witness fees, $84,673.10 for exemplification fees and the costs of copies necessarily obtained for use in the case, $609.84 for costs shown on the mandate of the court of appeals, and $285,906.00 in supersedeas bond premiums. Of these, only the cost for exemplification fees and the supersedeas bond premiums remain at issue. Plaintiff also seeks related discovery, in the form of documents and corporate representative depositions, from the Defendant and its parent company Brocade Communication Systems, Inc. ("Brocade").

## II.   Applicable Standard

Plaintiff contends that a de novo standard of review, under Rule 72(b)(3) of the Federal Rules of Civil Procedure, applies to the court's review of the magistrate judge's findings and recommendation. It is not entirely clear whether a de novo or clearly erroneous standard of review applies to Plaintiff's request for postjudgment relief with regard to costs and discovery. Out of an abundance of caution, the court conducted a de novo review rather than one based on a clearly

erroneous standard. In any event, whether the court conducted a de novo or clearly erroneous review is of no moment, as it reached the same result regardless of the standard applied.

### III.     Analysis

#### A.     **Exemplification Costs Incurred or Paid by Brocade**

Plaintiff contends that Defendant is not entitled to exemplification and bond premium costs paid by Brocade on Defendant's behalf and that the magistrate judge erred in concluding otherwise. Plaintiff asserts that under Rule 54, costs are awarded to the "prevailing party," and Brocade is not a prevailing party. As noted by the magistrate judge and acknowledged by Plaintiff, the Fifth Circuit has not previously addressed this specific issue. After reviewing cases in other jurisdictions that have addressed the issue, the magistrate judge concluded, based on the "weight of authority," that Rules 54(d) and 39 of the Federal Rules of Procedure do "not create an exception for costs incurred or paid by a non-party, or limit recovery to those costs that a prevailing party has incurred or paid itself." Report 4-5. The magistrate judge therefore concluded that the Defendant was entitled to recover exemplification and bond premium costs. Report 4 ("It is undisputed that Brocade incurred the exemplification costs for the benefit of Defendant, its wholly owned subsidiary, and that the costs would not have been incurred but for this action."). Plaintiff cites no authority to show that the magistrate judge's legal conclusion is incorrect or that she otherwise abused her discretion. The court therefore **overrules** this objection.

#### B.     **Necessity and Reasonableness of Supersedeas Bond Premiums**

Plaintiff argues that Defendant could have used free or less expensive alternatives to posting an uncollateralized supersedeas bond and because it did not, the magistrate judge should have rejected its request to be reimbursed for the full amount of bond premiums paid by Brocade.

**Memorandum Opinion and Order – Page 3**

Plaintiff contends that no bond whatsoever was necessary because neither it nor the court required Defendant to post a bond. For support that no bond was necessary under the circumstances to stay execution of the judgment pending appeal, Plaintiff cites two unpublished opinions from the Tenth and Eleventh Circuits. *See Campbell v. Rainbow City, Alabama*, 209 F. App'x 873 (11th Cir. 2006), and *Wilder v. Turner*, No. 02-CV-00732-WYD-CBS (D. Colo., Oct. 25, 2007).[*]

Plaintiff further asserts that Defendant or Brocade could have obtained a letter of credit, a collateralized bond, or deposited cash instead of an uncollateralized bond and that it should not be required to pay for Brocade's business decision to post an uncollateralized bond. Based on the holding in *Keystone Shipping Co. v. S.S. Monfiore*, 409 F.2d 1345 (5th Cir. 1969), Plaintiff maintains that at most, Defendant is only entitled to recover a "reasonable bond premium" or only those premiums that would have been owed on a fully collateralized bond. Pl.'s Obj. 6. Plaintiff contends that "[i]n contrast to the 1.25% paid by Brocade, supersedeas bond premiums *may be as little* as .5% annually (particularly when fully collateralized)." *Id*. (emphasis added). Plaintiff does not cite to any authority or evidence to support its statement in this regard; however, the parties appear to agree that premiums for a fully collateralized bond would have been lower, because more money is required up front to secure such a bond. Plaintiff also contends that Brocade could have secured the bond with a letter of credit or other assets to reduce the annual premium.

Under Rule 62(d) of the Federal Rules of Civil Procedure, if an appeal is taken, the appellant may stay execution of a money judgment by posting a supersedeas bond. Fed. R. Civ. P. 62(d). As noted by the magistrate judge, Defendant initially discussed with Plaintiff the possibility of staying

---

[*] The *Wilder* order is an unpublished slip opinion that is not available on Westlaw but was attached to Plaintiff's Objections as Doc. 263-1.

**Memorandum Opinion and Order – Page 4**

execution of the judgment with a letter of credit rather than a supersedeas bond, because it was concerned that the bond would require collateral in the form of a letter of credit due to the size of the commercial transaction and result in fees in addition to the supersedeas bond premiums. The parties submitted an agreed order on March 18, 2010 (Doc. 213), regarding their agreement to allow Defendant to post, as security, either a irrevocable standby letter of credit *or* a bond for $17,500,000.

Subsequently, Brocade determined that a supersedeas bond was a less expensive means of staying the judgment on appeal, and Defendant informed Plaintiff of Brocade's decision in this regard. Defendant presented evidence considered by the magistrate judge to show that the cost of issuing a letter of credit under Brocade's credit agreement with Bank of America would have resulted in $546,875 in fees for just one year, whereas the supersedeas bond premiums that it incurred for more than one year were only $285,906. Defendant's evidence further demonstrates that it did not overpay for the supersedeas bond, because the surety did not require collateral, only the corporate indemnity of Brocade, and the 1.25% bond premium rate obtained was much lower than the 2% and higher rates normally charged for supersedeas bonds issued solely on corporate indemnity.

According to Mark Munekawa ("Munekawa"), who is the vice president of Woodruff Sawyer & Co., Brocade's insurance and surety broker since 1997, "[u]sing cash collateral or a bank letter of credit can increase the net cost of the supersedeas bond . . . because those costs can exceed any premium savings between a collateralized bond and a non-collateralized bond." (Doc. 258-1, 5). Munekawa further states that "[w]hen cash collateral or a bank letter of credit is provided, the bond rate can be lower than 1.25%, but the lower premium can be more than offset by the added costs of the letter of credit or the internal costs and effects of the reduction of borrowing capacity." *Id.*

**Memorandum Opinion and Order – Page 5**

Brocade treasurer Jean Furter also provided a declaration in which he states that Brocade was not in a position to fully collateralize the supersedeas bond with $17.5 million or make an equivalent cash deposit into the court's registry to provide security for the judgment and that it would not have been prudent for it to allocate such a large portion of the company's available cash reserves given the uncertain financial and economic problems and credit crisis that began in late 2008. (258-1, 2-3).

Based on this and other evidence presented by Defendant, the magistrate judge concluded that Defendant met its burden of demonstrating that an uncollateralized bond with a premium rate of 1.25% was reasonable under the circumstances. The magistrate judge further noted that "Plaintiff has not provided, and the court cannot find, any binding authority to show that a court should decline to award appellate costs, taxable by statute and allowed by an agreed order, based on the availability of alternatives that may decrease direct costs but may also increase indirect costs to a prevailing party." Report 7.

Although not specifically addressed by the magistrate judge, the court determines that the *Keystone* case cited by Plaintiff is distinguishable and Plaintiff's characterization of the holding in that case is somewhat misleading. The Fifth Circuit affirmed the district court's holding in all respects, reasoning that:

> [T]he District Court allowed recovery only at the fully 'collateralized' premium rate of $3,939.50, finding that Keystone had made no attempt to secure the lower rate although there was nothing that would have prevented it from doing so by simply having the shipowner's underwriter give the usual letter of indemnity. Courts ought to encourage not discourage, such savings in useless costs so we find it easy to say that the District Court did not abuse its discretion in refusing to award the straight line rate.

*Keystone Shipping Co.,*, 409 F.2d at 1346 (quotation omitted). To fully understand the court's holding, it must be put into context. This was an admiralty case in which the district court found in

favor of Keystone after concluding that Monfiore was solely responsible for a collision and related damages. *Id.* In keeping with the custom in admiralty cases, both parties filed "Stipulations to Abide Decree" to prevent their vessels involved in the collision from being seized and to allow their continued operation. *Id.*

Before appealing the district court's judgment, Monfiore approached Keystone and agreed to an order cancelling the stipulation if it provided "a letter of undertaking in which libellant [Monfiore] agreed to abide the decree of the courts." *Keystone Shipping Co. v. S. S. Monfiore*, 275 F. Supp. 606, 607 (S.D. Tex. 1967). As noted by the district court, a letter of this kind involved having the hull underwriters issue an indemnity letter to the surety company and was a practice commonly followed in admiralty cases that enabled parties to provide security at a lower rate. *Id.* Keystone rejected the offer primarily for the purpose of deterring an appeal. *Id.*

After the Fifth Circuit affirmed the district court's judgment in favor of Keystone, Monfiore refused to pay the unreasonable premiums incurred by Keystone under the stipulation. *Id.* at 606-07. Monfiore argued that Keystone should not be permitted to recover the higher premium rate in light of its failure to obtain a collateralized or indemnitized premium rate and its refusal to agree to cancel the stipulation in return for an unsecured indemnity letter. *Id.* at 607. The district court agreed that the premiums incurred by Keystone under the stipulation were unreasonable, because Keystone could have avoided the more expensive premiums by following the common practice of having its hull underwriters issue the usual indemnity letter to the surety company *at no extra cost. Id.*; *Keystone Shipping Co.*, 409 F.2d at 1346. The district court therefore exercised its discretion by limiting Keystone's recovery to the lesser amount that it would have been expended had it paid the indemnitized premium rate. *Keystone Shipping Co.*, 275 F. Supp. at 607-08. Importantly, in limiting

**Memorandum Opinion and Order – Page 7**

Keystone's recovery to the amount it would have paid at a fully collateralized rate, the court did not hold that a party is required to obtain a lower fully collateralized rate even it doing so requires it to expend additional sums of money. *Id.* Rather, the court made clear that:

> ***This court is not holding that [a] party is under a duty to obtain the lower collateralized rate by depositing cash or securities with the surety company. It would be unreasonable to require a party to tie up his assets in order to minimize the other party's potential costs***. Likewise, a party is not under a duty to substitute his letter of undertaking for a stipulation since it would be unreasonable to require a party to shift the risk of loss from his underwriters to himself.

*Id*. at 608 (emphasis added). Thus, Plaintiff's argument to the contrary that Defendant should have paid significantly more to obtain a fully collateralized bond premium rate in order to reduce the cost to Plaintiff is not supported by *Keystone*.

In accordance with the reasoning in *Keystone*, the court concludes that it would be unreasonable to require Defendant to tie up more of its assets than necessary under a letter of credit or a fully collateralized supersedeas bond for the sole purpose of minimizing potential costs to Plaintiff. As previously noted, Defendant would have had to incur $546,875 in fees for a letter of credit for just one year, whereas the supersedeas bond premiums that it actually incurred for more than one year were only $285,906, and it is undisputed that it would have had to tie up more of its assets to obtain a fully collateralized supersedeas bond. For the same reason, Plaintiff's contention that Defendant or Brocade could have deposited cash into the court registry to avoid paying any bond premiums is likewise without merit and not supported by the holding in *Keystone*. Regardless of Defendant's or Brocade's financial position, it would be entirely unreasonable to require Defendant to deposit such a large sum of cash in the court's registry and tie up its cash reserves to secure the approximate $14.5 million judgment and satisfy the court's local rule requirement that an additional 20% be posted for security. *See* Local Rule 62.1.

**Memorandum Opinion and Order – Page 8**

The *Wilder* case and order relied on by Plaintiff are similarly distinguishable, because unlike that case, this court is not presented with a situation where the Plaintiff stipulated or agreed to stay execution of the judgment without any bond and the Defendant chose not to accept the stipulation. While Plaintiff contends that it "was more than willing to work with CNT [Defendant] in coming to agreement on alternative lower-cost security," it did not agree to waive the bond requirement and likely would not have agreed to do so. Pl.'s Obj. 5. As noted by Defendant in the parties' Joint Submission Regarding Bill of Costs, filed October 25, 2011:

> DCS's [Plaintiff's] intransigence in refusing to waive Local Rule 62.1 belies its current position that it was cooperative and open to alternative ideas about security. To the contrary, DCS appeared most interested in exerting maximum pressure on Brocade to discourage an appeal. DCS never proposed any alternatives to a letter of credit or a supersedeas bond, and none were discussed. Declaration of Harvey Cohen. As further evidence of DCS's attitude at that time, the Court should note that the Agreed Order Regarding Security to Stay Enforcement of Final Judgment signed by the Court on March 18, 2010, includes a provision insisted upon by DCS - adding a $500,000 penalty if McDATA did not post security by the deadline. (Doc. 213) DCS made very little effort to accommodate McDATA during the negotiations about security following the entry of judgment. Instead, it insisted that the judgment be over-secured, and insisted upon a strict deadline with a penalty for non-compliance in an amount greater than DCS is arguing about in its Motion to Retax Costs.
>
> DCS was unrelenting about securing the judgment to the point of refusing any relief from Local Rule 62.1 . . . and insisted upon being over-secured by almost $3,000,000 (necessitating an additional $37,500 of bond premium.)

Jt. Submission 8-9, and 13. The court agrees with Defendant's assessment that Plaintiff's insistence on the inclusion of a $500,000 penalty in the agreed order, as well as language stating that no stay of enforcement of the judgment will be in effect if Defendant fails to provide for the issuance of a letter of credit or bond by May 5, 2010, suggests that Plaintiff was more interested in using the parties' negotiations to exert pressure on Defendant to discourage it from appealing than in cooperating to reach a mutually beneficial outcome on the bond issue. Plaintiff's concern about

**Memorandum Opinion and Order – Page 9**

whether Defendant would be able to pay a judgment without the assistance of its parent company also leads the court to believe that it would have opposed any effort by Defendant to seek a waiver of Rule 62's bond requirement and the requirement under Local Rule 62.1 that it post an additional 20% for security. *See* Decl. of Harvey Cohen (Doc. 258-1 at 1).

Plaintiff's reliance on *Campbell v. Rainbow City, Alabama* is similarly misplaced. The Eleventh Circuit's affirmance of the district court's disallowance of what it deemed unnecessary bond premiums was based in part on its conclusion that the bond requirement likely would have been waived. As already explained, whether Defendant could have succeeded on a motion to waive the bond requirements under Rule 62 and Local Rule 62.1 is questionable given the contentious nature of the litigation and the hard-line position taken by Plaintiff. Moreover, the *Campbell* court's affirmance based on the district court's reasoning that "Rainbow City procured the bond on its own, without being required to do so by the district court to obtain a stay on appeal" is perplexing since the only option under Rule 62 to stay enforcement of a judgment is to post a bond, and Rule 54(d) does not limit recovery of costs to only those costs incurred pursuant to a court order. *Campbell*, 209 F. App'x at 876. Rather, Rule 54(d) states, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs — other than attorney's fees — should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). In any event, *Campbell* is an unpublished opinion and is not binding precedent. The court therefore declines to follow it to the extent Plaintiff relies on it for the proposition that recovery of bond premium costs is limited to only those cases in which an order has been entered by the district court requiring the posting of a bond to stay execution of a judgment on appeal. Accordingly, for all of the reasons stated, the court concludes that the $285,906 in bond

premiums sought by Defendant were necessary and reasonable under the circumstances, and **overrules** Plaintiff's objections regarding the necessity and reasonableness of the bond secured by Defendant.

### C. Request for Discovery

Plaintiff contends that magistrate judge's characterization of its arguments in favor of discovery as speculative is erroneous and that it should be allowed to test Defendant's factual assertions made in support of its claim for costs. Plaintiff argues that it should be allowed to determine what efforts Defendant and Brocade made to limit costs in staying the judgment and that it would be unfair to assess $285,906 in bond premium costs against it without allowing it to conduct limited discovery. Defendant counters that Plaintiff has presented only speculation that Brocade could have spent less to obtain either a supersedeas bond or a letter of credit and should not be allowed to put Brocade to the additional expense of further discovery so that it can pursue purely speculative lines of inquiry.

Plaintiff's request for discovery is moot given the court's determination that Defendant was not required to expend additional sums of money and tie up its assets in order to minimize Plaintiff's potential costs and waiver of security all together, regardless of the form, was unlikely. Based on Defendant's evidence, the court is also convinced that it undertook reasonable steps in evaluating various options for securing the judgment on appeal and decided on a uncollateralized bond, not to run up costs indiscriminately for the sake of running up costs, but because it appeared to be the best option available and made sense from a business perspective under the circumstances. Furthermore, the court will not allow the parties to prolong this matter further and pile up yet more time and expenses on satellite litigation over costs. "The jig is up." This litigation has spanned six years. It

is time for the litigation to end and for the parties to move forward. The court therefore **overrules** Plaintiff's objection on this ground.

## IV. Conclusion

After conducting a de novo review and carefully considering the objections, briefs, file, and record in this case, and the findings and conclusions of the magistrate judge, the court concludes that the findings and conclusions of the magistrate judge are correct. The court therefore **overrules** Plaintiff's objections, and **denies** Plaintiff's Motion to Retax Costs or, in the Alternative, Motion for Leave to Conduct Limited Discovery.

**It is so ordered** this 21st day of May, 2012.

Sam A. Lindsay
United States District Judge